**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division – Greenbelt)**

---

| | | |
|---|---|---|
| **JANE DOE,** | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | Civil Action No. |
| | * | |
| **DISTRICT OF COLUMBIA**, | * | |
| | * | |
| **Serve**: Mayor Muriel Bowser | * | |
| Office of the Mayor | * | |
| 441 4th Street, NW | * | |
| Room 1010 South | * | |
| Washington, DC 20001 | * | |
| | * | |
| and | * | |
| | * | |
| **Serve**: Attorney General Brian Schwalb | * | |
| Office of the Attorney General | * | |
| 400 6th Street, NW | * | |
| Washington, DC 20001 | * | |
| | * | |
| AND | * | |
| | * | |
| **CHARLES E. WATTS, II**, | * | |
| *In His Individual Capacity*, | * | |
| 5814 Aley Road | * | |
| Temple Hills, MD 20748 | * | |
| Prince George's County, Maryland | * | |
| | * | |
| **Serve**: Charles E. Watts | * | |
| 5814 Aley Road | * | |
| Temple Hills, MD 20748 | * | |
| | * | |
| AND | * | |
| | * | |

| | |
|---|---|
| **PAMELA A. SMITH,** | * |
| *In Her Individual Capacity,* | * |
| | * |
| AND | * |
| | * |
| **NIKKI F. LAVENHOUSE,** | * |
| *In Her Individual Capacity,* | * |
| 9100 Old Burton Circle | * |
| Upper Marlboro, MD 20772 | * |
| Prince George's County, Maryland | * |
| | * |
| Serve: Nikki F. Lavenhouse | * |
| 9100 Old Burton Circle | * |
| Upper Marlboro, MD 20772 | * |
| | * |
| AND | * |
| | * |
| **JOHN DOE 1,** | * |
| | * |
| *Defendants.* | * |

---

## COMPLAINT

Plaintiff Jane Doe, by and through undersigned counsel, brings this action against the District of Columbia, Charles Watts, individually, Pamela Smith, individually, Nikki Lavenhouse, individually, and John Doe 1, individually, and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action under the pseudonym "Jane Doe" because this case arises from allegations that she was sexually assaulted and raped by a sworn police officer. Given the highly personal, sensitive, and traumatic nature of the allegations, Plaintiff seeks to protect her identity and privacy while pursuing her claims.[1]

---

[1] Although Federal Rule of Civil Procedure 10(a) generally requires a complaint to name all parties, courts may permit a party to proceed under a pseudonym. *See B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021); *James v. Jacobson*, 6 F.3d

2. Plaintiff Jane Doe proceeds under a pseudonym because this action concerns allegations of sexual assault and rape; public disclosure of Plaintiff's identity would expose her to additional harm and loss of privacy attendant to matters of the utmost personal sensitivity.

3. This action arises from the rape and sexual assault of Plaintiff by Defendant Charles Watts ("Defendant Watts"), who, at all relevant times, was a sworn officer of the Metropolitan Police Department of the District of Columbia ("MPD").

4. Plaintiff alleges that Defendant Watts used the authority and instrumentalities of his position as a police officer, including his uniform, marked police cruiser, and apparent police authority, to follow, seize, detain, and sexually assault her. Plaintiff brings claims against Defendant Watts under 42 U.S.C. § 1983 for violations of her rights under the United States Constitution.

5. Defendant Pamela A. Smith ("Defendant Smith") was the Chief of MPD at the time of the incident. Plaintiff brings claims against Defendant Smith under 42 U.S.C. § 1983, in her individual capacity, based on her own alleged acts and omissions concerning the supervision, management, training, and oversight of MPD personnel.

6. Defendant Nikki F. Lavenhouse ("Defendant Lavenhouse") was the Commander of MPD's Fourth District at the time of the incident. Plaintiff brings claims against Defendant Lavenhouse under 42 U.S.C. § 1983, in her individual capacity, based on her own alleged acts and omissions concerning the supervision and oversight of Fourth District personnel.

7. Defendant John Doe 1 is an MPD supervisor whose identity is presently unknown, but who, upon information and belief, was responsible for supervising Defendant Watts during the relevant time. Plaintiff brings claims against Defendant John Doe 1 under 42 U.S.C. § 1983, in his

---

233, 238 (4th Cir. 1993) (pseudonymity factors); *Doe v. Sidar*, 93 F.4th 241 (4th Cir. 2024). Plaintiff shall file a motion to proceed under a pseudonym.

or her individual capacity, based on the supervisor's own alleged acts and omissions concerning Defendant Watts.[2]

8. Plaintiff brings claims against the District of Columbia ("Defendant District of Columbia") under 42 U.S.C. § 1983 for municipal liability.

9. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe and continuing injuries and damages, including psychological and emotional harm, economic losses, medical and psychological treatment expenses, pain and suffering, humiliation, and loss of enjoyment of life.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under 42 U.S.C. § 1983.

11. This Court has venue under 28 U.S. Code § 1391, which specifies that a lawsuit may be brought in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and Plaintiff's sexual assault occurred in this District.

## PARTIES

12. Plaintiff Jane Doe is an adult individual residing in the State of Florida.

13. Defendant Watts was, at all relevant times, a sworn police officer employed by MPD.

14. At all relevant times, Defendant Watts was acting under color of the laws, statutes, ordinances, regulations, customs, and usages of the District of Columbia.

---

[2] Plaintiff will seek to identify this Defendant through early discovery and amend the Complaint accordingly.

15. At all relevant times, Defendant Watts was on duty, in full MPD uniform, armed with his MPD-issued firearm and operating a marked MPD cruiser; every act of Defendant Watts alleged herein was made possible only because he was clothed with the authority of the District of Columbia.

16. Defendant Watts is sued in his individual capacity.

17. Defendant Smith was the Chief of MPD at the time of the events alleged herein. Defendant Smith is sued in her individual capacity.

18. Defendant Lavenhouse was the Commander of MPD's Fourth District at the time of the events alleged herein. Defendant Lavenhouse is sued in her individual capacity.

19. Defendant John Doe 1 is an MPD supervisor whose identity is presently unknown. Upon information and belief, Defendant John Doe 1 was the watch commander, sergeant, or other supervisory officer responsible for supervising Defendant Watts during the relevant time. Plaintiff will seek to identify Defendant John Doe 1 through discovery and amend this Complaint accordingly.

20. Defendant District of Columbia is a municipal corporation and governmental entity responsible for the Metropolitan Police Department. The District of Columbia employed, trained, supervised, disciplined, and equipped Defendant Watts.

## FACTUAL ALLEGATIONS

21. At approximately 12:10 a.m. on February 2, 2024, Plaintiff was stopped at an intersection in Washington, D.C.

22. Defendant Watts, who was in uniform and operating a marked MPD cruiser, pulled up beside Plaintiff's vehicle at a stoplight.

23. Defendant Watts asked Plaintiff whether she wanted to go home with him.

24. Plaintiff refused Defendant Watts's proposition.

25. When the traffic light changed, Plaintiff proceeded through the intersection and continued driving.

26. Defendant Watts continued to drive alongside Plaintiff and to speak with her at several traffic lights.

27. After Plaintiff declined his proposition, Defendant Watts followed Plaintiff as she drove out of the District of Columbia.

28. Plaintiff continued driving toward Maryland. Defendant Watts followed her across the District of Columbia-Maryland border.

29. At the intersection of Georgia Avenue and Colesville Road in Silver Spring, Maryland, Defendant Watts got out of his marked MPD cruiser, approached Plaintiff's vehicle, and inspected her headlights.

30. Defendant Watts then directed Plaintiff to pull her vehicle around the corner. Plaintiff understood that a uniformed police officer was conducting a traffic stop, and she complied.

31. Defendant Watts ordered Plaintiff to get into the back seat of his marked police cruiser and, with Plaintiff inside, drove the cruiser to the dark, abandoned parking lot of an apartment complex then under construction in Silver Spring, Maryland.

32. Upon information and belief, the rear doors of Defendant Watts's cruiser could not be opened from the inside.

33. Defendant Watts told Plaintiff that the stop concerned a problem with one of her headlights.

34. The stated reason for the stop was a pretext.

35. Defendant Watts had no authority to conduct a traffic stop in Maryland. He was not in fresh pursuit of any person suspected of a felony, was not responding to a request for assistance from any Maryland law enforcement agency and was not acting under any mutual aid agreement.

36. Defendant Watts did not initiate the stop for a legitimate law-enforcement purpose.

37. Rather, Defendant Watts followed Plaintiff into Maryland and stopped her for the purpose of gaining access to and exercising control over her after she had rejected his sexual proposition.

38. Upon information and belief, Defendant Watts did not request Plaintiff's license or registration, did not run any records check, did not notify MPD dispatch or any Maryland agency of the stop, and did not issue Plaintiff a citation or warning.

39. No legitimate traffic-enforcement purpose required or permitted Defendant Watts to order Plaintiff out of her vehicle, move her into the back seat of his police cruiser, drive her to a secluded parking lot, or hold her there.

40. Even if the initial stop had been justified, Defendant Watts's detention of Plaintiff exceeded the scope and duration of any lawful traffic stop.

41. Plaintiff was not free to leave.

42. Plaintiff was alone, in an unlit and secluded location, in the custody and control of an armed and uniformed police officer who had followed her from Washington, D.C., into Maryland.

43. Defendant Watts's use of his police authority, uniform, weapon, and marked cruiser caused Plaintiff to submit to his commands and rendered her unable to leave.

44. Plaintiff was thus seized and detained by Defendant Watts under the apparent and purported authority of his position as a sworn MPD officer.

45. After placing Plaintiff inside his police cruiser, Defendant Watts removed his body-worn camera.

46. Upon information and belief, MPD policy required Defendant Watts to activate his body-worn camera at the start of any traffic stop and to keep it activated and properly positioned for the duration of the encounter.

47. Plaintiff does not know whether Defendant Watts's body-worn camera had ever been activated.

48. While Plaintiff was detained inside the police cruiser, Defendant Watts raped her.

49. Plaintiff did not consent to any sexual contact with Defendant Watts.

50. Plaintiff told Defendant Watts "no" and asked him, "Why are you doing this to me?"

51. She did not physically resist because Defendant Watts was an armed, uniformed police officer who had detained her in a secluded location at night, and she feared what he would do if she resisted.

52. Plaintiff was not free to leave at any point from the moment Defendant Watts directed her to pull her vehicle around the corner until he returned to his cruiser and drove away. Defendant Watts raped Plaintiff during, and as part of, that single and continuous seizure.

53. Defendant Watts committed the sexual assault while wielding the authority and coercive power of his position as a police officer.

54. Defendant Watts's conduct constituted a profound abuse of the authority entrusted to him by Defendant District of Columbia.

55. After the sexual assault, Defendant Watts drove Plaintiff in his police cruiser back to her vehicle.

56. At her vehicle, Defendant Watts directed Plaintiff to provide him with her cellular telephone; Defendant Watts demanded that Plaintiff unlock her phone.

57. Plaintiff complied because she was afraid of Defendant Watts and remained under his control.

58. Defendant Watts then entered his own telephone number into Plaintiff's phone under the contact name "Charlie."

59. Defendant Watts thereafter returned to his police cruiser and drove away.

60. After Defendant Watts left, Plaintiff drove home.

61. Plaintiff immediately told her family what had happened.

62. Police were called to Plaintiff's residence, where an incident report was taken.

63. Later that same morning, Plaintiff underwent a forensic sexual assault examination at Shady Grove Hospital.

64. The examination included the collection of a rape kit.

65. Plaintiff also received follow-up mental health care as a result of the sexual assault.

66. Plaintiff returned to the scene of the assault with Montgomery County Police Department personnel.

67. A condom used by Defendant Watts was recovered from the scene.

68. Plaintiff reported the assault to both the MPD's Internal Affairs Division and the Montgomery County Police Department.

69. MPD's Internal Affairs Division sustained administrative charges against Defendant Watts, including for having sex while on duty, leaving the District without permission, and logging off his cruiser's computer. Defendant Watts pleaded guilty to some of those charges.

70. Plaintiff sought and obtained a protective order against Defendant Watts in Montgomery County, Maryland.

71. The judge who issued the protective order found, by a preponderance of the evidence, that Defendant Watts had raped or sexually assaulted Plaintiff. The order barred Defendant Watts from contacting Plaintiff and from possessing a firearm.

72. Defendant Smith was the Chief of MPD at the time of the events alleged herein.

73. As Chief of MPD, Defendant Smith held a senior leadership position within the Department and, upon information and belief, had responsibility for MPD's policies, practices, training, supervision, and discipline of its officers.

74. Defendant Lavenhouse was the Commander of MPD's Fourth District at the time of the events alleged herein.

75. As Fourth District Commander, Defendant Lavenhouse held a supervisory position within the district to which Defendant Watts was assigned and, upon information and belief, had responsibility for operational oversight and supervision of Fourth District personnel.

76. Defendant John Doe 1 is an MPD supervisor whose identity is presently unknown. Upon information and belief, Defendant John Doe 1 was the watch commander, sergeant, or other supervisory officer responsible for supervising Defendant Watts during the relevant tour of duty.

77. At the time of the incident, Defendant Watts was assigned to MPD's Fourth District and was working an overnight shift.

78. Defendant Watts was alone, in uniform, armed, and operating a marked MPD cruiser.

79. Defendant Watts left the District of Columbia and entered Maryland while on duty.

80. He did so without his supervisor's permission and has since admitted it.

81. Before leaving the District, Defendant Watts logged off the mobile computer in his cruiser, which disabled the cruiser's GPS tracking, so that his supervisors would not know where he was. Defendant Watts has admitted doing so.

82. Upon information and belief, no supervisor, including Defendant John Doe 1, was alerted to, inquired about, or responded to Defendant Watts's loss of GPS tracking or his absence from his assigned patrol area during the relevant tour of duty.

83. After the assault, investigators searching Defendant Watts's MPD locker found a large box of condoms.

84. Upon information and belief, MPD's supervisory structure included responsibility for monitoring officers' assignments, locations, and activities while on duty, including officers working alone during overnight patrol shifts.

85. Plaintiff alleges that the supervisory failures concerning Defendant Watts, including any failure to monitor his location and activities, enforce applicable requirements, or respond to known risks of misconduct, contributed to the circumstances in which he was able to use his police authority and equipment to detain and sexually assault Plaintiff.

86. Prior to Plaintiff's assault, Defendant District of Columbia, and Defendants Smith, Lavenhouse, and John Doe 1, had actual or constructive notice of complaints or misconduct involving Defendant Watts.

87. At the time of the assault, Defendant Watts had served as an MPD officer for approximately eight years.

88. Upon information and belief, before February 2024 Defendant Watts had a record of sustained misconduct findings, which MPD maintained and which was available to his chain of command, including Defendants Smith, Lavenhouse, and John Doe 1.

89. The nature and number of those findings are in Defendants' exclusive possession and will be the subject of discovery, but, upon information and belief, includes prior sexual misconduct.

90. Upon information and belief, before February 2024, MPD repeatedly found that its officers had engaged in sexual activity while on duty or had left the District in MPD cruisers without authorization and imposed only short suspensions.

91. These included a 12-day suspension of an officer found to have had sex twice while on duty and a 10-day suspension of an officer found to have left the District in his cruiser on several occasions.

92. In 2022, the Office of the District of Columbia Auditor publicly reported that MPD's disciplinary process had returned officers considered a threat to safety to patrol.

93. MPD's practice of imposing minimal discipline for on-duty sexual activity and unauthorized departures from the District, combined with its failure to monitor whether officers on solitary overnight patrol disabled their GPS tracking or left the District, communicated to MPD officers, including Defendant Watts, that such conduct would be tolerated.

94. Despite such notice, Defendant District of Columbia retained Defendant Watts in a patrol assignment in which he was authorized to encounter, stop, detain, and transport civilians while alone and unsupervised.

95. Defendant District of Columbia failed to adequately investigate and discipline officer sexual misconduct and other abuses of police authority.

96. Defendant District of Columbia maintained inadequate policies, customs, practices, training, supervision, or enforcement concerning officer sexual misconduct.

97. Defendant District of Columbia failed to adequately enforce requirements governing the activation, use, and tampering of body-worn cameras.

98. Defendant District of Columbia failed to adequately train and supervise officers regarding the treatment and protection of civilians encountered during solitary traffic stops, detentions, and transports.

99. These failures existed despite the obvious risk that an officer exercising substantial authority over civilians while alone and unsupervised could abuse that authority.

100. Defendant District of Columbia's actions and omissions demonstrated deliberate indifference to the constitutional rights of individuals encountered by its police officers.

101. MPD's handling of Plaintiff's report, which treated the encounter as on-duty sexual activity and a breach of administrative rules rather than as a sexual assault, despite Plaintiff's immediate report, her same-day forensic examination, and the recovery of physical evidence from the scene, further reflects the District's failure to adequately investigate and address allegations of officer sexual misconduct.

102. Defendant District of Columbia's policies, customs, practices, failures to train, failures to supervise, failures to discipline, and ratification of misconduct were a moving force behind the constitutional injuries suffered by Plaintiff.

103. In early 2026, the MPD conducted a disciplinary hearing concerning Defendant Watts's alleged misconduct, at which MPD sought his termination; through counsel, Defendant Watts called the misconduct "something he regrets" and "a mistake he made."

104. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe and ongoing psychological injury.

105. Plaintiff has experienced paranoia, anxiety, and other trauma-related symptoms requiring continuing therapy and prescribed psychiatric medication.

106. Plaintiff relocated out of state out of fear of retaliation.

107. Plaintiff lost her employment as a substitute teacher because of the effects of the trauma on her mental health.

108. Plaintiff has incurred and will continue to incur medical and psychological treatment expenses.

109. Plaintiff has suffered lost wages and diminished earning capacity.

110. Plaintiff has also suffered humiliation, loss of dignity, emotional distress, fear, pain and suffering, and loss of enjoyment of life.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – Unreasonable Seizure and Excessive Force
### Fourth and Fourteenth Amendments
***Against Defendant Watts***

111. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

112. At all relevant times, Defendant Watts was acting under color of state law.

113. Defendant Watts seized Plaintiff by initiating a pretextual traffic stop, ordering her from her vehicle, placing her inside his police cruiser, driving her to a secluded location, and preventing her from leaving.

114. The seizure was not supported by reasonable suspicion, probable cause, or any other lawful justification.

115. Defendant Watts also unreasonably prolonged and expanded the seizure beyond the mission of any traffic stop by removing Plaintiff from her vehicle, confining her in the back seat of his police cruiser, driving her to a dark and secluded parking lot, and holding her there for purposes unrelated to any traffic infraction.

116. While Plaintiff remained seized, Defendant Watts used force against Plaintiff, including by sexually assaulting and raping her.

117. The force Defendant Watts applied was objectively unreasonable and served no legitimate law-enforcement purpose.

118. Defendant Watts's conduct violated Plaintiff's right to be free from unreasonable seizures and excessive force under the Fourth Amendment to the United States Constitution.

119. Defendant Watts acted knowingly, maliciously, and with reckless disregard for Plaintiff's clearly established constitutional rights.

120. As a direct and proximate result of Defendant Watts's conduct, Plaintiff suffered the damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant Watts and seeks damages in excess of seventy-five thousand dollars ($75,000) and all other available relief.

**COUNT II**
**42 U.S.C. § 1983 – Violation of Substantive Due Process and Bodily Integrity**
**Fourteenth Amendment**
***Against Defendant Watts***

121. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

122. Plaintiff possessed a clearly established constitutional right to bodily integrity and to be free from state-inflicted sexual violence, including the right not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm.

123. Defendant Watts, while acting under color of law and wielding the authority, uniform, weapon, and police vehicle conferred upon him by Defendant District of Columbia, invaded Plaintiff's bodily integrity by sexually assaulting and raping her.

124. Defendant Watts's conduct was an egregious abuse of official power.

125. Defendant Watts's conduct shocks the conscience.

126. Defendant Watts's actions violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.

127. As a direct and proximate result of Defendant Watts's conduct, Plaintiff suffered the damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant Watts and seeks damages in excess of seventy-five thousand dollars ($75,000) and all other available relief.

## COUNT III
## 42 U.S.C. § 1983 – Supervisory Liability
***Against Defendant Pamela A. Smith, Individually***

128. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

129. At all relevant times, Defendant Smith was the Chief of MPD and held a senior leadership position within the Department.

130. Defendant Smith had supervisory responsibilities concerning MPD's administration, policies, training, supervision, and discipline of its officers.

131. Plaintiff's constitutional rights were violated when Defendant Watts used his police authority to seize, detain, and sexually assault her, as alleged herein.

132. Upon information and belief, Defendant Smith was responsible for establishing, implementing, and/or overseeing policies and practices concerning the supervision and monitoring of MPD officers, including officers assigned to patrol alone during overnight tours.

133. Upon information and belief, Defendant Smith knew or should have known of deficiencies in MPD's supervision, monitoring, training, or enforcement practices that created a substantial risk that officers would abuse their authority over civilians.

134. Before February 2, 2024, Defendant Smith had actual or constructive knowledge that Defendant Watts was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to civilians like Plaintiff, including the conduct described above.

135. Upon information and belief, despite that risk, Defendant Smith failed to take reasonable steps within her authority to address those deficiencies.

136. Defendant Smith's own acts or omissions were a moving force behind, and were causally connected to, the violation of Plaintiff's constitutional rights.

137. Defendant Smith responded to that knowledge so inadequately as to show deliberate indifference to, or tacit authorization of, the offensive practices, and acted with deliberate indifference to the constitutional rights of civilians who came in contact with MPD officers.

138. As a direct and proximate result of Defendant Smith's conduct, Plaintiff suffered the damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant Smith, in her individual capacity, and seeks damages in excess of seventy-five thousand dollars ($75,000), together with all other available relief.

**COUNT IV**
**42 U.S.C. § 1983 – Supervisory Liability**
***Against Defendant Nikki Lavenhouse, Individually***

139. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

140. At all relevant times, Defendant Lavenhouse was the Commander of MPD's Fourth District, to which Defendant Watts was assigned.

141. Defendant Lavenhouse held supervisory responsibilities concerning the operation and oversight of the Fourth District and its personnel.

142. Plaintiff's constitutional rights were violated when Defendant Watts used his police authority to seize, detain, and sexually assault her, as alleged herein.

143. Upon information and belief, Defendant Lavenhouse had responsibility for supervising and/or overseeing Fourth District operations, including the deployment and supervision of officers working alone during overnight tours.

144. Upon information and belief, Defendant Lavenhouse knew or should have known of deficiencies in the supervision, monitoring, training, or enforcement practices applicable to Fourth District officers that created a substantial risk of abuse of police authority.

145. Before February 2, 2024, Defendant Lavenhouse had actual or constructive knowledge that Defendant Watts was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to civilians like Plaintiff, including the conduct described above.

146. Upon information and belief, despite that risk, Defendant Lavenhouse failed to take reasonable steps within her authority to address those deficiencies.

147. Defendant Lavenhouse's own acts or omissions were a moving force behind, and were causally connected to, the violation of Plaintiff's constitutional rights.

148. Defendant Lavenhouse responded to that knowledge so inadequately as to show deliberate indifference to, or tacit authorization of, the offensive practices, and acted with deliberate indifference to the constitutional rights of civilians who came into contact with Fourth District officers.

149. As a direct and proximate result of Defendant Lavenhouse's conduct, Plaintiff suffered the damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant Lavenhouse, in her individual capacity, and seeks damages in excess of seventy-five thousand dollars ($75,000), together with all other available relief.

**COUNT V**
**42 U.S.C. § 1983 – Supervisory Liability**
***Against Defendant John Doe 1, Individually***

150. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

151. Defendant John Doe 1 is an MPD supervisor whose identity is presently unknown. Upon information and belief, Defendant John Doe 1 was responsible for supervising Defendant Watts during the relevant tour of duty.

152. Plaintiff's constitutional rights were violated when Defendant Watts used his police authority to seize, detain, and sexually assault her, as alleged herein.

153. Upon information and belief, Defendant John Doe 1 had responsibility for supervising Defendant Watts during his overnight and/or midnight tour, including responsibility for oversight of his assignment, location, and activities while on duty.

154. Upon information and belief, Defendant John Doe 1 knew or should have known of circumstances creating a substantial risk that Defendant Watts would abuse his authority over civilians or was responsible for supervisory practices that failed to detect or address that risk.

155. Before and during the relevant tour of duty, Defendant John Doe 1 had actual or constructive knowledge that Defendant Watts was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to civilians like Plaintiff, including the conduct described above and Defendant Watts's unauthorized departure from his patrol area and the District.

156. Upon information and belief, despite that risk, Defendant John Doe 1 failed to take reasonable steps within his or her supervisory authority to prevent or address the conduct at issue.

157. Defendant John Doe 1's own acts or omissions were a moving force behind, and were causally connected to, the violation of Plaintiff's constitutional rights.

158. Defendant John Doe 1 responded to that knowledge so inadequately as to show deliberate indifference to, or tacit authorization of, the offensive practices, and acted with deliberate indifference to the constitutional rights of civilians who came into contact with Defendant Watts.

159. As a direct and proximate result of Defendant John Doe 1's conduct, Plaintiff suffered the damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant John Doe 1, in his or her individual capacity, and seeks damages in excess of seventy-five thousand dollars ($75,000), together with all other available relief.

**COUNT VI**
**42 U.S.C. § 1983 – Municipal Liability**
***Against Defendant District of Columbia***

160. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

161. Prior to the assault of Plaintiff, Defendant District of Columbia had actual or constructive notice of a risk that Defendant Watts had engaged in sexual misconduct, abuses of police authority, or other conduct that made him a danger to civilians.

162. Upon information and belief, the Chief of MPD is the official with final policymaking authority for the District of Columbia concerning the supervision, discipline, deployment, and body-worn camera compliance of MPD officers.

163. Despite such notice, Defendant District of Columbia retained Defendant Watts in a position in which he was authorized to exercise substantial and coercive authority over civilians.

164. Defendant District of Columbia maintained, implemented, or tolerated policies, customs, or practices of failing to adequately investigate and discipline officer sexual misconduct.

165. Defendant District of Columbia further failed to adequately train and supervise officers concerning sexual misconduct, abuse of police authority, and the treatment of civilians during solitary traffic stops, detentions, and transports.

166. Defendant District of Columbia also failed to adequately enforce requirements governing body-worn cameras and their use by police officers.

167. Defendant District of Columbia's policies, customs, practices, failures to train, failures to supervise, failures to discipline, and ratification of officer misconduct reflected deliberate indifference to the constitutional rights of civilians.

168. Defendant District of Columbia's actions and omissions were a moving force behind the deprivation of Plaintiff's constitutional rights.

169. But for Defendant District of Columbia's policies, customs, practices, and deliberate failures, Plaintiff would not have suffered the constitutional injuries alleged herein.

170. As a direct and proximate result of Defendant District of Columbia's conduct, Plaintiff suffered the damages described herein.

WHEREFORE, Plaintiff demands judgment against Defendant District of Columbia and seeks damages in excess of seventy-five thousand dollars ($75,000) and all other available relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment in her favor against Defendants, and award:

A. Compensatory damages in an amount to be determined by the trier of fact;

B. Punitive damages against the individual Defendants in their individual capacities, to the extent permitted by law;

C. Pre-judgment and post-judgment interest as permitted by law;

D. Costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable law; and

E. Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

DATE: November 3, 2026

Nathaniel L. Foote, Esq. | Bar #30928
Kylie E. Tejera, Esq. | Bar #31966
**ANDREOZZI + FOOTE**
4503 N. Front Street, Harrisburg, PA 17110
Ph: (800) 706-2764 | Fax: (717) 525-9143
Email: teamc@vca.law
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division – Greenbelt)**

| | | |
|---|---|---|
| **JANE DOE,** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | Civil Action No. |
| | * | |
| **DISTRICT OF COLUMBIA**, | * | |
| | * | |
| **Serve**: Mayor Muriel Bowser | * | |
| Office of the Mayor | * | |
| 441 4th Street, NW | * | |
| Room 1010 South | * | |
| Washington, DC 20001 | * | |
| | * | |
| and | * | |
| | * | |
| **Serve**: Attorney General Brian Schwalb | * | |
| Office of the Attorney General | * | |
| 400 6th Street, NW | * | |
| Washington, DC 20001 | * | |
| | * | |
| AND | * | |
| | * | |
| **CHARLES E. WATTS, II**, | * | |
| *In His Individual Capacity*, | * | |
| 5814 Aley Road | * | |
| Temple Hills, MD 20748 | * | |
| | * | |
| **Serve**: Charles E. Watts | * | |
| 5814 Aley Road | * | |
| Temple Hills, MD 20748 | * | |
| | * | |
| AND | * | |
| | * | |
| **PAMELA A. SMITH**, | * | |
| *In Her Individual Capacity*, | * | |

| | |
|---|---|
| AND | * |
| | * |
| **NIKKI F. LAVENHOUSE**, | * |
| *In Her Individual Capacity*, | * |
| 9100 Old Burton Circle | * |
| Upper Marlboro, MD 20772 | * |
| | * |
| Serve: Nikki F. Lavenhouse | * |
| 9100 Old Burton Circle | * |
| Upper Marlboro, MD 20772 | * |
| | * |
| AND | * |
| | * |
| **JOHN DOE 1**, | * |
| | * |
| *Defendants*. | * |

---

## JURY DEMAND

**COMES NOW**, Plaintiff Jane Doe, by and through counsel, Andreozzi + Foote, and requests that this case be tried with the assistance of a jury.

Respectfully Submitted,



DATE: November 3, 2026

Nathaniel L. Foote, Esq. | Bar #30928
Kylie E. Tejera, Esq. | Bar #31966
**ANDREOZZI + FOOTE**
4503 N. Front Street, Harrisburg, PA 17110
Ph: (800) 706-2764 | Fax: (717) 525-9143
Email: teamc@vca.law
*Counsel for Plaintiff*